We'll call our next case. This is Don Valli and Anton Dubinsky v. Avis. And this is 243025. Good afternoon, Mr. Martin. Good afternoon, Your Honors. And may it please the court, James Martin for defendants and appellants. I'd like to reserve three minutes for rebuttal with the court's permission. Sure. As our briefing reveals, Your Honors, reversals called for in this case based on this court's decision in Chaston and the futility principle that it applies. Mr. Martin, as you well know, this court sees a fair number of class action appeals. And but I have to concede I'm not sure I've ever seen one quite like this one, at least with the convergence of the issues that we have here. And I'm wondering if we could at least get a couple of if not housekeeping, a few basics out of the way. First of all, would I be correct that chronology is very important in an understanding of this case, given the fact that it was filed back September of 2014? And, you know, we have activity up through the appeal here that was taken in October of twenty four. So, Your Honor, if you're asking me, was this a lengthy proceeding set of proceedings until the motion to compel claim came? I would I would not dispute that. Yeah. If you're if you're asking me. Well, I'm asking you about chronology, not that it's an old case, but actually the various steps and the main step that I have in mind in trying to set up the inquiry is this period of time between the filing of the complaint. In which there is only one named plaintiff, Fally, if I recall correctly, eventually there are two. Am I correct? That's correct. OK. Dubinsky, when he is added. So we had this punitive class action and. Correct me if I'm wrong, but it would seem to me that given the date at which the Avis rental agreement was altered, amended to include the arbitration provision in the class action waiver, which was April one of twenty sixteen, that really that provision has no applicability here because Valley was not subject to that agreement. OK, if that's the case, then there is not only no obligation, there's no ability on the part of the defendant to invoke those provisions. Am I right? In fact, that's where the doctrine of futility would come in. That's your argument. I agree with that. OK, so we can mark out that period of time. I realize chronology isn't that time in and of itself isn't the decider in these cases. But but we know we also know that prejudice is now off the table has been off the table since Morgan versus Sundance came around. Well, as this court said in Chaston, it really isn't appropriate for a futility analysis anyway. That is, well, yeah, I wrote Chaston. It's true. Right. And but again, I'm just trying to get down to where do we really start looking since this is a waiver case? And what's the definition? Well, your honor, it's the intentional relinquishment of a known right. Relinquishment or abandonment of a known right. So you've got no known right up to at least up to the time of the rental agreement, given who the named plaintiffs are here. Well, your honor, again, I'm out on a limb here. That was a softball. I'm interpreting with this what your honor wrote Chaston. But let me try to unpack that. I don't think the waiver analysis properly starts, as this court said in Chaston until class certification. Yes. Yeah. And if we apply that rule, I'm being ponderous, I guess. But that's why I'm going to the penultimate. So, again, let me unpack that. All the judges in Chaston agreed that the right to arbitrate is not properly subject to a waiver analysis until it's enforceable. And it only became enforceable here on class certification and after the op out period. So that's our waiver window, if we're going to look at it, because this court also said that that pre-certification conduct should not be counted against the defendant in a waiver analysis. You're talking about forfeiture. October 23 is when it was certified. I'm sorry? October 23 is when it was certified. Right. But then there were delays in there that were beyond the defendant's control. But once the class was certified, no waiver is possible here because the defendant made it clear at that point that the right to arbitrate was in play. The defendant raised... That may be what's at contention here. They're saying that even looking from, I think they're saying, even looking from October 23, that the way Avis conducted litigation was sufficient to indicate a preference for litigation. What was it that you're referring to when you say that there are things in play here that would suggest... So, Your Honor, I would just point the court to the record and say there isn't any conduct between the time that the class was certified and the time the motion to compel was made that would substantiate the defendant intended to relinquish the enforceable right to arbitrate. What happened in that window was exactly the opposite. At every opportunity, on briefing on certification, in court hearings, in the 23F petition to this court, and finally in the motion to compel, the arbitration provision was asserted as a marker in the class certification analysis, and in fact, Your Honor... It wasn't only a marker. It was pleaded as an affirmative defense on two occasions. Yes, and my point is that the rightness argument that comes out of Chaston was specifically made when these arguments were made. So, Your Honor, back to your remark that this is a waiver case, this is not a waiver case. Under White, if we even got there... I'm not saying it's a waiver case, but certainly the plaintiffs, the class, is arguing it is a waiver case. So, to break it down, Your Honor, we have the fertility principle on the one hand, which takes root here based on Chaston, and we don't have a white waiver on the other hand because what happened after the class was certified reflected the defendant's intent to assert the arbitration right as to the putative class members who were now arguably members of the class. The record was... When does it become clear that there are some members of the putative class that may be subject to the amendment to the Avis agreement? Because we all know that this putative class is a very amorphous thing. They're not parties. They're not anything but this amorphous group of human beings out there who are going to be defined as a group at some point when the class is certified. But as people who are specific human beings to whom arbitration may apply, we're only going to know that once the class is certified and somehow the members of the class have been identified, right? I agree. No dispute there, Your Honor. If that's how we analyze this case, this court has to reverse. It has to reverse applying Chaston on the one hand in its futility analysis, which aligns with this case, and it has to reject the notion that there was a waiver after the right became enforceable. And so either way, Your Honor, the motion to compel should be reheard by the district court without a waiver analysis in it. So what you're asking is that we send it back? Yes. All right. What about the presence of and participation by your client in discovery? That discovery takes place. In fact, mediation takes place. There's a reference somewhere in one of the briefs that the mediation was both court-ordered and voluntary, and I don't quite understand which was which. But in any event, you did participation mediation, right? Yes. Voluntarily or willingly. Right. And you did participate in the conduct of or at least the responding to some discovery. Correct. And isn't that something that has some significance or some import for an argument that you preferred the litigation course, the arbitration course, that you agreed to discovery within the Rule 23 proceeding? So I think the answer to that in this case is no, and it's no for two reasons. As noted by this court in Chaston, and in fact, in White, unless and until the putative class members are part of the class, good faith participation in the litigation doesn't evoke an intent to relinquish a right to arbitrate that's not even justiciable yet. And if you look at the timeline for discovery, the putative class was not in the case when the discovery was conducted. If you want to take it one step further, Your Honor, if you unpack the discovery, it was all applicable to the named class members. It couldn't have been resisted on the basis of the arbitration clause. It was all relevant. So we don't want to put the defendant in that position of having to respond in good faith in litigation to relevant discovery and being forced to contemplate whether that's a waiver for a right that doesn't even exist and isn't enforceable yet. And that's why this court's dividing line in Chaston makes sense. To put White into the calculus, White says the issue becomes different when the defendant has a right to arbitrate to enforce from the outset of litigation. Then, if you're making tactical decisions about discovery and merits briefing, it stands in an entirely different footing. In White, it would have been known from the beginning of the case that arbitration... Yes, that's my point. That's when a discovery analysis could be relevant on a waiver issue, but not in a case like this one where it's not. It strikes me that participation in mediation, especially if it's court-ordered, is not really inconsistent with arbitration. Well, and it's not evoking the specific intent to waive an enforceable right. It is... The right to arbitration, I mean, it's not... The waiver is, well, this court knows what a waiver is. It's an elevated standard. It is something where you can get to the point almost of unequivocal. You can't get anywhere near that on this record. Could you have... You, your... Somebody representing your client has submitted a letter when the... I assume the court-ordered arbitration came first or mediation came first. I don't know if it did or not, but could Avis have submitted a letter to the court saying that you anticipate that the suit will ultimately involve persons subject to an arbitration clause and just put the court on notice that participation in mediation would therefore not seem to be warranted? Well, first of all, it was warranted as to the name class representatives and the class of renters that they represented. So, again, we couldn't have stepped aside. But that sort of notice would have been the essence of futility that this court described in Chaston. By the way, Your Honor, if there is a motion to certify, if it includes these individuals, if the court grants a class that includes them, at that point in time we might have something to say about arbitration. That is not... There's no federal rule that requires that. And let's stick to the rules because the district court, the magistrate judge who wrote the opinion from which people... or one of the opinions in any event that now escapes me, but used the word at least once, and it may have been several times, mentioned arbitration. I don't know what that means. We have rules of civil procedure for a reason. And the defendant, Avis, here, formally invoked as an affirmative defense on two occasions in response to the first amended complaint and in response to the second amended complaint, arbitration. So in a no-discipline regime in which we live, you didn't simply mention it. You raised it on those two occasions formally. So do you have any suggestion as to... Maybe you've already answered this as you're talking about these hypotheticals of if this happens, we may, or this occurs, we might. But what is implied by mention? Have you ever encountered that in any... I know you've litigated aggregate litigation for years, Mr. Martin. Have you ever encountered that being a requirement or a practice of mentioning to the court that arbitration may come of that? So let me answer that in three ways. First, the no-displeading rule with the defense is the one applicable standard that we can find where you might have a discussion about needing to raise the right to arbitrate. After that, or without that, there isn't any federal rule or case that requires this kind of notice, mention, whatever it might be. And then coming back to Chaston, it would be futile. So it can't affect the ongoing litigation on the one hand, which does not involve the arbitration agreement, or the putative class members who aren't parties and may never be parties on the other. It would be an extraordinary concept of waiver to call that the intentional relinquishment of a known right by not doing it. Let me just hopefully clear the air on something, and I will want to hear from your friends on the other side about this. Chaston, if I recall correctly, did discuss the prejudice issue, did it not?  And, of course, we know that's off the table since Morgan versus Sundance. So do you see that change in the law as in any way affecting or undermining Chaston's importance in this case? So my answer to that is unequivocal, and it's no. I think Morgan actually substantiates the futility principle as applied in Chaston to the facts of this case. The futility principle, as this court noted in Chaston, applies in a variety of contexts. Exhaustion of remedies, ripeness, we cited two cases to the court where it applied in the context of a personal jurisdiction defense. Meaning that it's a procedural rule that cuts across litigation. Morgan says we don't have arbitration-specific rules, and by parity of reasoning to Morgan, what we should do is be applying futility in this context. Chaston also, it seems to me, survives Morgan because Morgan doesn't discuss or attempt to do away with the concept of futility in its entire analysis. Last, as the prejudice I mentioned before, when this court in Chaston got down to referring to prejudice, it said prejudice is ill-suited for the futility analysis. So it specifically took it out of play. So for those reasons, I think Morgan substantiates the application of futility here, and most certainly you can't find in that case any notion that it reverses it or undercuts it. Thank you. Thank you. Good afternoon, Mr. Penelas? Penelas. May it please the court, good afternoon. Chaston stands for the principle that Avis didn't have to move to dismiss the complaint in favor of arbitration or to compel arbitration until such time as those absent class members were before the court on a motion for class certification. I agree with that. I absolutely agree with that. It would have been futile for them to have filed a motion to dismiss and or to have moved to compel arbitration until those parties are before the court. What about up to the point where the class actually was certified? Correct, correct. The actual certification, which naturally defines what the class is and who would qualify as a member. I'm not sure if they had an obligation to do it on the motion for class certification or immediately after the motion. We know they did oppose on those grounds.  And I think that's right. And I think Chaston stands for that principle, and I think Chaston is correct in that regard. But that's not really the analysis that I think the court should entertain here. There are two significant inconsistencies involved in this matter. First and foremost, Avis's litigation conduct from, and I think Judge Smith, you're right, it starts on April 1, 2016, when they add this provision to the consumer contract. From that point forward, they know at some point that they're going to assert that arbitration is an obligation of at least some portion of what we're seeking to make a class. Well, did you at any point alter your own strategy and then, pursuant to that, seek to define the class accordingly? That is to say, to divide the class, or what originally was seen as the class when it was Valley, into a class of those who did not sign an agreement that contained arbitration and waiver of class and a subclass that did, in fact, sign such an agreement. Because we always sought to have a class as inclusive as possible from the date the practice... How would that not be inclusive? You just have subclasses. Well, no, we sought to have a class including those people who were, at least according to Avis, subject to arbitration. Okay, so that would have been what? Your strategy then would have been to seek to have the arbitration provision held unenforceable? Yes, and I think the arbitration provision is unenforceable, not just because they waived it, but because, pursuant to the express terms of the arbitration agreement, there's no court that could enforce this arbitration agreement. But isn't that issue an issue to be decided by the arbitrator? No, I think that's an issue that's to be decided by the court. And this is how it would play out, it seems to me, Judge. If this court were to say that Avis is right and that these parties are obligated to arbitrate, this arbitration clause includes a class action waiver. In their reply brief, we point out that there's a specific exemption in the arbitration clause for claims that are within the jurisdiction of the small claims court. Now, there's a choice of law provision. That dog won't hunt. The class is seeking an amount, right? The class, again, is this amorphous group of people? They're not individual plaintiffs. So how do you fit this? You were only claiming that small amount? No, no, no, Judge. And respectfully, I disagree. I think the dog will hunt, and here's why. There's a class action waiver in this arbitration clause. So if they go to arbitration, they can't do it as a class. That means they're going to have to file individual arbitrations. The small claims section of the special civil part in New Jersey, and this case is governed by New Jersey law pursuant to the choice of law provision they put in the consumer contract, means that any case under $5,000 is cognizable in the special civil part. These are traffic tickets. None of these claims are going to be worth... That is if you prevail, right? What do you mean? Well, no. The value of any individual claim is going to be less than $5,000 because they're traffic tickets. So if these people are forced to go to arbitration, they can't do an arbitration as a class action. They're stuck with individual claims, and every claim is worth less than $5,000, which means every claim is cognizable in the special civil part, which means if you bring it to the AAA, they're going to say, we don't have jurisdiction over this because there's a specific exemption in this arbitration clause that says claims worth less than $5,000 are not cognizable in arbitration. So the great irony here is if this court were to say these people have to go to arbitration, they can't go to arbitration pursuant to the express terms of the arbitration provision that Avis has foisted upon these consumers. That's the great irony. So what would you have? The only... You'd have a wrong without a remedy, perhaps. But the only remedy these people would have is to go to the small claims courts wherever they live. So somebody is going to file a small claims case in Iowa, and an Iowa judge in a small claims docket is going to have to figure out the New Jersey Consumer Fraud Act over a $150 ticket. So in their reply brief, their only response to this argument is, what are you talking about? These are small claims cases. This is a big class action case under the Class Action Fairness Act. You said it's worth more than $5 million. How could this be cognizable in a small claims court? That's the only place this is cognizable pursuant to the express terms of the arbitration provision at issue here. You don't want it to be the only place where it's cognizable. Well, that's why I don't think this... But it's not arbitrable, is the point. These cases are not arbitrable pursuant to the arbitration provision in their contract. Because you can't handle it as a class action, and you can't handle it in arbitration because it's cognizable in small claims court. What was the subclass that was certified here? It's a class of preferred members. There are different types of members of Avis and budget, and it's a class of preferred members. So it's made a different contract. Yeah. So as things stand now on appeal, as they are on appeal, you have a subclass that has been certified, correct? That's correct. Yeah. And it consists of what? It consists of preferred members from six years prior to the time we filed the complaint in 2014. Currently, depending on what this court decides, to the present and going forward, because they haven't changed their practice. Did your argument of small claims come into play during the certification process? Not during the certification. I think we did argue in response to their, I can't remember whether it was during the certification process or the subsequent motion, but we did argue that the arbitration clause was unenforceable for that reason. Yes. Judge Clark never reached it, and the reason why Judge Clark never reached it is because Judge Clark concluded that their litigation conduct exhibited a preference for litigation as opposed to arbitration. And your honors asked, I think, a really important question. I think both Judge McKee and Judge Smith, you asked this question, and that is what about mediation? That's dangerous when you have Judge McKee and me on the same page, but I don't want to take up any of your time. I'm just trying to help people make sense of it. I think it's a really important question, and it was discussed, frankly, and the case is cited in footnote eight of our brief, in the Chan versus Panera case. And in that case, that defendant also participated in litigation. And what the court talked about in that case and in the Gutierrez case, and I think it's really important, is what you want to avoid is allowing a defendant in this situation to leverage a heads-I-win, tails-you-lose type of a situation. And in the Chan versus Panera case, the court talks about the fact that engaging in mediation, frankly, is just that. And it is important, and Judge Smith, you noted it, and it wasn't in the briefs. It was actually in Judge Clark's decision, in which Judge Clark pointed out that they engaged in mediation, not just court-ordered mediation. And I agree, Judge McKee, you got to do what the judge tells you to do. So if the judge tells you to go to mediation, you got to go there. Doesn't mean, however, you can't say to the judge, I don't think we should go to mediation because there's a part of this group that you're telling us to settle that we don't think we should have to settle with because they have to go to arbitration. So I don't think you can tell the judge, I'm not going to arbitration. I think you can, should, and probably must tell the judge, we don't think we should have to go to mediation. But they engaged in both private mediation and they engaged in court-ordered mediation. In fact, three separate mediators, and I think I'm right in saying this, five mediation sessions over the course of three years. What was the time period for that? It was a three-year period. It was all after they inserted this clause in the customer agreement. And up until, I think, 2023, I think, Judge Phillips, Judge Lane Phillips. 2016 is when they inserted the clause. They inserted the clause in April 2016. The mediation was after that. And three separate mediators, I believe five mediation sessions. And what the Chan v. Panera case talks about, and I think it's really important and I think it's a significant thing. And that is that mediation is part of the litigation process or it's part of a strategy. And when it's court-ordered mediation, it's part of the litigation process. When it's private mediation, it's part of a strategy. But was it, and I don't know the exact date of this either, but my recollection is that the mediation took place sometime after, or at least some of the mediation took place after the filing in opposition to the class certification motion. I do think there was. That's when I think we did it with Judge Phillips. I think that's correct. But there were other, and maybe even, I know Judge Checky sent us to a mediator as well. And I think that may also have been at least one of the sessions with that woman was, I think, after the class certification motion was filed. But there were other mediations that happened before the class certification motion was filed. And that's important. And it's particularly important, it seems to me, in a class action case because that's exactly the heads I win, tails you lose situation. There's nothing that a defendant in a class action likes better than a class action release. So why not go to mediation and see if we can get a class action release? And if it doesn't work out, we'll pull the arbitration card out of our back pocket. And that's the heads I win, tails you lose situation that this court should not permit. And the way to not permit that is to do exactly what Judge Fuentes said the defendant should have done in White v. Samsung. And that is, at the very least, file something formal with the court. I've never heard of this either. I know you're going to say that. I've never heard of anything called a notice of intent to arbitrate. But that's what Judge Fuentes talks about in the White v. Samsung case, whether you call it a notice of intent to arbitrate or just a formal letter to the judge saying, hey, we intend to arbitrate. You then give that court the ability to manage the litigation in a sensible way. And the purpose of arbitration and the reason why it's preferred under the Federal Arbitration Act is because it allows for two things, efficiency and economy. And when you litigate a case for six, eight years and you go to three different mediators in five sessions and you spend lots of money and lots of effort and see if you can get a case settled before you assert arbitration, that's not efficiency. That's not economy. And that's heads I win, tails you lose. And that's exactly what this court should prevent. Well, a policy reason and a major policy reason for the class action device and its history is certainly efficiency. But let me take you back to class certification itself. I'm still trying to figure out how you get by 23A's requirements when you are trying to certify a class, some of whom are like Bally and Dubinsky, who were pre-20 whatever it was, 2016 when the amendment to the agreement was entered into. And members who come along afterwards who were subject to that agreement. Well, I mean, that begs the question as to whether the agreement's enforceable and or whether they waived it. Well, but at that point, it's in place. Whether it's ultimately enforceable or not, it's in place. I mean, I'm trying to figure this out. And I do know that typicality was an issue that was litigated during the class certification process. And I can certainly understand that. It would seem to me, though, that adequacy is a huge issue here. But I don't know whether that was raised and litigated or not. How could Bally and Dubinsky be adequate to represent the interests of all these others post-2016 or post-new agreement when they were not subject to it? Because if the arbitration clause is not enforceable, they're the same. The only distinction is. As it is. Well, I agree. But I don't think the arbitration clause is enforceable. And I think they waived it. So if the arbitration clause is not enforceable, it's a distinction without a difference because it's unenforceable and they're all situated in the same place. So that's really the issue. And it seems to me, I mean, by the express terms of the arbitration clause, it's illusory. If you send these people to arbitrate, they can't. They can't. Because they can't do it as a class action and their individual claims are exempted by the express terms of the arbitration agreement itself. And then on top of that, they wanted to see if they could get a class action release before they, you know, even told the court in any significant way. And I do want to address one thing, and I see I'm out of time, but I do want to address one thing. Your Honor pointed out twice during my adversary's argument that they asserted that as an affirmative defense, and indeed they did. Along with 49 other affirmative defenses in what can only be characterized as a kitchen sink pleading. And it is not unusual, as we all know, for defendants to assert in an answer affirmative defenses that they never assert. But they didn't do that at class certification. That's absolutely true. I agree. Thank you. Thank you. So three quick points. You can do four, unless one of those three includes my concern. That is, your opponent seems to make a very good point about the illusory nature of the arbitration agreement. Maybe you could respond to that. Yeah, so as far as the enforceability issue goes, your Honor, that wasn't even raised in the briefing in the trial court. It wasn't addressed by the judge, and it's subject to waiver principles that this court applies routinely. If there's going to be any issue. You are suggesting that they're raising that issue now as subject to waiver principles. Yes. Yes. And if that issue is going to be in play at all, your Honor, it should be on remand when the motion to compel is reheard without the waiver issue. If I understand your adversary's position in accord with Judge McKee's question. I mean, you're saying it was an issue that wasn't raised and was never taken up. And I'm asking, I mean, it may be an issue in this case, but it's an issue that did not affect, impact in any way, the actual certification or discussion of what this class would be. Did it? It did not do that, your Honor, and it did not affect the judge's waiver analysis. It never came into it. So that's, as I said, an argument that was launched for the first time in the briefing on appeal. So did the district court, if I recall correctly, reach the issue at least of typicality and determine that that was a problem for purposes of certification of the class? Your Honor, I would love to rewind this case and have you preside over the certification hearing. I had been trying to make that clear. A motion. I taught class actions for 14 years, and I'm trying to figure this thing out. Look, I'm as perplexed by that as the court is. Typicality, predominance, commonality, all those issues we said were implicated by the injection of the arbitration agreement. In fact, we tried to get this court to take it up on 23F unsuccessfully. But that's not the issue now that we bring to this court in this instance. Let me make an admission. I was on that motions panel, and I will always regret the fact that we didn't try to clean this up for all of you at that time. Judge McKee will never let me forget that I just made that admission. One of many. But the three points I would like to turn to. Futility is a compartment. Waiver is a compartment. Small claims is another issue. If we stick to the futility analysis until there's an enforceable right to arbitrate, the litigation conduct doesn't count. It doesn't show a waiver. Once we have a class that's certified, then we can talk about a waiver analysis. But there's no waiver here. The arbitration right we just had the discussion was injected specifically into the proceedings over and over again by the defendant. There is no waiver possible here. Lastly, on the small claims exception, if we're looking at the waiver issue, it doesn't overtake it. It doesn't obviate it. In the small claims exception, you can't fit a class action in it in the first place. And if you don't have a class action on the arbitration agreement, we don't have the answer to that in the second place. So either way, it doesn't affect the waiver resolution. And if some of these individuals want to take their cases to small claims court downstream, that issue can be addressed. But it doesn't change the need to reverse the waiver finding and send this back. And to just clarify for me, please, where we are right now. And of course, we are on appeal. But we are on appeal while there is still pending in the district court a class action or an action, which if I understand correctly, the terminology used by the magistrate judge, a subclass. I'm not accustomed to having subclasses where there is not a class. But there seem to be, if I recall the order, a subclass that continues to exist. Yes. Or am I misremembering? No, no, no. There are two sets of individuals, class members, et cetera, involved potentially in this case. The first are the non-arbitration provision class members. That class has been certified. The second group are the people who do have the arbitration provision. And that's what we're here arguing about. Are we going to be permitted to make a motion to compel as to those individuals? And the answer to that, as I said, should be yes, without regard to waiver. All right. We'll continue to untangle this. Thank you. Thank you. Thank you very much, counsel. Thanks for your briefing, your arguments, and we will circle back.